# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# ABERDEEN DIVISION

JAMES DRURY                                                              PLAINTIFF

VS.                                              CIVIL ACTION NO. 1:17-cv-00059-DAS

COMMISSIONER OF SOCIAL SECURITY                                          DEFENDANT

## MEMORANDUM OPINION

This matter is before the court pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security ("Commissioner") denying the application of James Drury for supplemental security income under the Social Security Act. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit.

The court, having reviewed the administrative record, the briefs of the parties, the applicable law, and having heard oral argument, finds the Commissioner's decision denying benefits should be affirmed. The decision is supported by substantial evidence and no prejudicial error has been found.

*Facts and Procedural History*

On April 14, 2008, James Drury filed his application for SSI, alleging onset of disability on February 27, 2008. After the application was denied at the lower levels, a hearing was held before an administrative law judge ("ALJ") on May 7, 2010. An unfavorable decision was issued on June 23, 2010, which was later vacated by the Appeals Council. Following a second hearing on May 19, 2011, the ALJ again issued an unfavorable decision. The Appeals Council again vacated the ALJ's decision. A third hearing was held on January 10, 2013, which also resulted in an

unfavorable decision. The Appeals Council denied review. Drury then appealed to this court, which reversed and remanded the case for further consideration. On remand from this court, the ALJ conducted a fourth hearing on January 8, 2015, which again resulted in an unfavorable decision. The Appeals Council remanded. A fifth hearing was held on December 1, 2015. An unfavorable decision followed, and the Appeals Council denied review. The case is now before this court a second time.

The ALJ found that Drury had severe impairments of obsessive-compulsive disorder, impulse control disorder, depression, anxiety, and emerging cluster C personality disorder. After determining that the claimant did not meet any listed impairment, the ALJ determined Drury's residual functional capacity, finding he could perform a full range of work at all exertional levels, but with the following non-exertional limitations: simple, routine, repetitive tasks of unskilled work; ability to maintain attention and concentration for two-hour periods; can work in proximity to, but not in coordination with, co-workers; no interaction with the general public; limited to low stress work with no fast-paced production requirements and only simple work related decisions, with few or no changes in the work setting.

At step four, the ALJ found that Drury was capable of performing past relevant work as a janitor as generally performed in the national economy. Alternatively, the ALJ found that other jobs exist in significant numbers in the national economy that claimant can perform. Representative occupations included kitchen helper (medium, unskilled, 80,000 nationally), laundry worker (medium, unskilled, 30,000 nationally), and hand packager (medium, unskilled, 40,000 nationally). The ALJ thus found claimant was not disabled.

The claimant asserts the ALJ's decision is not supported by substantial evidence and is not based upon proper legal standards because the ALJ failed to give due consideration to medical

opinion evidence provided by his primary treating mental health provider and arrived at his RFC using a defective hypothetical posed to the vocational expert.

## *Law and Standard of Review*

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164(5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434(5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential process.[1] The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, claimant must prove he is not currently engaged in substantial gainful activity.[3] Second, claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4] At step three, the ALJ must conclude claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1.[5] Fourth, claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.[6] If claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering claimant's residual functional capacity, age, education, and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which claimant can perform, claimant is given the chance to prove that he cannot, in fact, perform that work.[8]

*Analysis and Discussion*

I.      MEDICAL OPINION EVIDENCE

---

[1] *See* 20 C.F.R. § 404.1520 (2012).
[2] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).
[3] 20 C.F.R. § 404.1520(b) (2012).
[4] 20 C.F.R. § 404.1520(c) (2012).
[5] 20 C.F.R. § 404.1520(d) (2012). If a claimant's impairment meets certain criteria, that impairment is of such severity that it would prevent any person from performing substantial gainful activity. 20 C.F.R. § 404.1525 (2012).
[6] 20 C.F.R. § 404.1520(e) (2012).
[7] 20 C.F.R. § 404.1520(f)(1) (2012).
[8] *Muse*, 925 F.2d at 789.

Claimant argues that the ALJ erred by not conducting a factor-by-factor analysis of the medical source statements of treating psychiatrists Dr. Aleem and Dr. Chechelashvili, as required by *Newton v. Apfel*, 209 F.3d 448, 456-58 (5th Cir. 2000). However, such a *Newton* analysis is required only when the ALJ rejects the opinion of the treating physician, in the "absen[ce of] reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist." *Id.* at 453. The presence of competing medical opinions from treating or examining physicians takes the case outside the purview of *Newton*.

The ALJ conducted an extensive analysis of the medical evidence of record. Dr. Chechelashvili evaluated claimant from July 5, 2006, through September 19, 2011.[9] In his April 19, 2010, "Medical Opinion Re: Ability to Do Work-Related Activities (Mental)" form, Dr. Chechelashvili opined that Drury had poor or no ability to complete a normal workday and workweek without interruptions from psychologically based symptoms or to respond appropriately to changes in a routine work setting.[10] However, he also indicated that Drury had unlimited or very good ability to remember work-like procedures and to understand, remember, and carry out very short and simple instructions. Drury exhibited a good ability to maintain attention for two-hour segments, sustain an ordinary routine without special supervision, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, and be aware of normal hazards and take appropriate precautions. Finally, Chechelashvili opined that claimant possessed a fair ability to maintain regular attendance and punctuality, work in coordination with or proximity to others without being unduly distracted,

---

[9] Doc. 7, p. 547, 551.
[10] Doc. 7, p. 482-84.

make simple work-related decisions, perform at a constant pace without an unreasonable number and length of rest periods, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and deal with normal work stress.

The ALJ gave significant weight to the portions of Dr. Chechelashvili's opinion stating claimant had a good ability to understand, remember, and carry out detailed instructions, as well as a fair ability to set realistic goals or make plans independently of others, to deal with stress of semi-skilled and skilled work, and to maintain socially appropriate behavior. However, the ALJ found Dr. Chechelashvili's opinion that claimant was unable to complete a full work day or to respond to changes in the work place was contradicted elsewhere in the record. Notably, following Dr. Chechelashvili's 2010 assessment form, Drury worked for nine months as a janitor and afterwards doing yard work, and completed a two-year associate's degree in collision repair, with another semester of electrical coursework.[11] Additionally, Dr. Chechelashvili's subsequent treatment notes somewhat contradict his 2010 assessment form. In September 2011, he reported that Drury was working part-time cutting grass and that he was compliant with his medications with no side effects.[12] Drury had "no major affective or psychotic symptoms," and "appear[ed] as unmotivated and without ambition as ever." Such an assessment evidences a lack of motivation rather than mental or functional barriers to gainful employment. *See Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir. 1988) (holding unemployment for reasons other than disability cannot support a claim for disability benefits).

---

[11] Doc. 7, p. 91-92, 549-50.
[12] Doc. 7, p. 504.

The ALJ also found Dr. Chechelashvili's 2010 assessment contradicted by reports from Dr. Aleem. Dr. Aleem first examined claimant in November 2012.[13] He described Drury as smart and articulate and reported no mood swings or suicidal/homicidal ideations. Drury was shy and guarded initially, but became more cooperative as the intake progressed. In August 2013, Dr. Aleem reported that Drury "has been doing excellent" and "is much more social."[14] Notably, Drury was working at the time, "helping older people cut grass & earning money so he can look into business in the future." Dr. Aleem noted that Drury was "able to cope w[ith] stressors" and denied any side effects from his medications. Claimant reported only minimum OCD symptoms of hand washing at that time. A follow up report in 2015 revealed that claimant was "not going out much" but would make an effort to get out more.[15] His phobias had all but subsided, yet he remained "unmotivated."

In January 2012, claimant was seen by Dr. Hardy, who reported that Drury plays softball with his friends, "mows lawns during the summer," "denies problems w[ith] his mood," and "is currently working in a pawn shop, mostly as a cleaner. It is a full time job he has had for 5 weeks & he likes it."[16] Dr. Hardy reported similar findings in July 2012.[17]

Claimant argues the ALJ erred by giving only partial weight to a February 2013 "Medical Opinion Re: Ability to Do Work-Related Activities" completed by licensed professional counselor Lori Latham and countersigned by Dr. Aleem which reported only a fair ability to

---

[13] Doc. 7, p. 501.
[14] Doc. 7, p. 914.
[15] Doc. 7, p. 937.
[16] Doc. 7, p. 503.
[17] Doc. 7, p. 502.

remember work-like procedures, ask simple questions or request assistance, be aware of normal hazards and take appropriate precautions, and maintain socially appropriate behavior; all other areas were assessed as poor or none.[18] The ALJ noted that this assessment is inconsistent with the record as a whole, notably Dr. Aleem's own subsequent report of August 2013, which described claimant as "doing excellent," being "much more social," and even working part-time. *See Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) ("The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."). On an independent review of the evidence, the court finds the ALJ did not err in his assessment of the medical opinion evidence.

## II.    CLAIMANT'S RFC

Claimant argues the hypotheticals posed to the vocational expert to arrive at his RFC were flawed because they (1) failed to incorporate moderate limitations with regard to concentration, persistence, and pace, and (2) erroneously incorporated a requirement of periodic supervisory support.

The ALJ found that Drury retained the RFC for all exertional levels of work, but with non-exertional limitations. He could perform the simple, routine, repetitive tasks consistent with unskilled work; maintain attention and concentration for two-hour blocks; and work in proximity to, but not in coordination with, co-workers. Additionally, he would require the support of a supervisor (feedback/direction/help) every two hours, could have no interaction with the general

---

[18] Doc. 7, p. 514-17.

public, and would be limited to low stress work (having no fast-paced production requirements and making only simple, work-related decisions), with few or no changes in the work setting.[19]

Claimant argues that the RFC fails to account for a moderate limitation in concentration, persistence, and pace, and further argues that a limitation to simple, routine, repetitive tasks is not a limitation regarding concentration, persistence, and pace. While the court agrees that the ability to perform simple tasks differs from the ability to stay on task,[20] the ALJ specifically addressed concentration, persistence, and pace in the RFC. As to concentration, the ALJ found claimant could maintain attention and concentration for two-hour blocks. As to persistence and pace, the ALJ limited claimant to low stress work, with no fast paced production requirements. The ALJ found Drury could be asked to make only simple work-related decisions and needed consistency in the workplace, with no changes in the work setting.[21]

Dr. Chechelashvili's assessment opined that Drury possessed a good ability to maintain attention for two hour segments. He was also of the opinion that Drury possessed a good ability to ask simple questions or request assistance and to accept instructions and respond appropriately to criticism from supervisors. Claimant counters with the assessment from Lori Latham, who opined that he had no ability to maintain attention or to accept instructions and criticism, and found only a fair ability to ask simple questions or request assistance. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders*, 914 F.2d at 617. *See also Newton*, 209 F.3d at 458 (distinguishing *Newton* from "a case where there is competing first-

---

[19] Doc. 7, p. 545.
[20] *See generally Cruz v. Colvin,* 2016 WL 8672925 (S.D. Tex. Dec. 28, 2016).
[21] At oral argument, claimant conceded that the ALJ properly addressed persistence and pace, arguing only for a failure to properly address and incorporate a limitation regarding concentration.

hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another"). Therefore, the ALJ properly addressed concentration, persistence, and pace in the RFC, and those limitations are supported by substantial evidence, as is the limitation regarding supervisory feedback.

## *Conclusion*

The court finds, therefore, that substantial evidence supports the ALJ's decision in this matter, and it is thus affirmed. A final judgment consistent with this opinion will be entered.

SO ORDERED, this the 30th day of January, 2018.

/s/ David A. Sanders
 UNITED STATES MAGISTRATE JUDGE